UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE and JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATRIUS HEALTH, INC.<br><br>Defendant. | Civil Action No. _____<br><br>[Massachusetts Superior Court Case No. 2282CV00982]<br><br>**DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1442(a)(1)** |

## NOTICE OF REMOVAL

For more than 15 years, the federal government has engaged non-governmental entities to help construct a nationwide health information technology infrastructure designed to improve patient engagement and access to care. Since 2011, Atrius Health, Inc. ("Atrius Health") has been one of those entities. Plaintiffs John Doe and Jane Doe now challenge Atrius Health's efforts to implement the federal government's directives and promote patient engagement and access to care. Atrius Health removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and sets forth below a "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a).

## NATURE OF THE REMOVED ACTION

1. On October 18, 2022, Plaintiffs filed a Class Action Complaint ("Complaint") against Atrius Health in Norfolk County Superior Court, Case No. 2282CV00982. Atrius Health was served on December 6, 2022.

2. Atrius Health is a non-profit multi-specialty, multi-site medical group practice in Eastern Massachusetts. An early adopter of electronic health records (EHR) and data analytics, Atrius Health delivers a system of connected care for adult and pediatric patients.

3. Plaintiffs allege that a tracking "pixel" from Facebook, which is now known as Meta (the "Meta Pixel"), is "[o]ne of the world's most prevalent tracking pixels," Compl. ¶ 31, and is "embedded on millions of websites," including "many of the top hospitals in the United States," *id.* ¶ 77. The Meta Pixel is a snippet of JavaScript code.[1] Plaintiffs allege that "Facebook touted Meta Pixel (which it originally called Facebook Pixel) as 'a new way to report and optimize for conversions, build audiences and get rich insights about how people use your website.'"[2] According to the Complaint, "tracking pixels" facilitate collection of "dozens of data points about individual website users who interact with a website." *Id.* ¶ 31.

4. The federal government and health care providers across the country use tracking pixels to improve their website functions and user experience. For example, the Privacy Policy on the website Medicare.gov states: "We use third-party web services to conduct outreach and education through the use of digital advertising for Medicare.gov. These third-party services may collect information through the use of web beacons (also called pixels) that are located on our pages. A web beacon . . . in combination with a cookie, allows us to collect information regarding the use of the web page that contains the web beacon."[3]

---

[1] Facebook, *Meta for Developers: Get Started*, available at https://developers.facebook.com/docs/meta-pixel/get-started.
[2] Compl. ¶ 54 (quoting Meta, *Announcing Facebook Pixel*, available at https://developers.facebook.com/ads/blog/post/v2/2015/10/14/announcing-facebook-pixel/).
[3] Medicare.gov, *Privacy Policy*, available at https://www.medicare.gov/privacy-policy; *see also* CMS.gov, *Privacy Policy* (same disclosure in privacy policy), available at https://www.cms.gov/About-CMS/Agency-Information/Aboutwebsite/Privacy-Policy.

5. Atrius Health and its vendors operate the website www.atriushealth.org. That website is "designed for interactive communication with patients, including scheduling appointments, searching for physicians, paying bills, requesting medical records, learning about medical issues [and] treatment options, and joining support groups." *Id.* ¶ 20. Plaintiffs' Complaint alleges that Atrius Health is "among" the healthcare providers that "have embedded Meta Pixel." *Id.* ¶ 79. According to Plaintiffs, when the Meta Pixel code snippet is triggered, a user's browser sends information to Facebook in data packets. *See, e.g.*, *id.* ¶¶ 61, 69. Plaintiffs do not allege that social security numbers, medical insurance numbers, birth dates, or medical test results were disclosed to third parties like Facebook. Plaintiffs instead point to internet protocol (IP) addresses, "tracking cookies," "browser-fingerprints," and a user's Facebook ID. *Id.* ¶¶ 33–44.

6. Plaintiff John Doe is allegedly a Facebook user and patient of Atrius Health, and when he purportedly visited the Atrius Health website in 2022, he alleges that information from his interactions with the website were transmitted to Facebook based on instructions from the Meta Pixel. *Id.* ¶¶ 10, 88–89, 92. Plaintiff John Doe does not allege whether he was logged into Facebook when he visited the Atrius Health website, what web browser he was using, or how that web browser was configured. Plaintiff Jane Doe is also allegedly a patient of Atrius Health, and when she purportedly visited the Atrius Health website in 2022, she alleges that information about her interactions was sent to Facebook because of the Meta Pixel. *Id.* ¶¶ 9, 91–92. Plaintiff Jane Doe does not allege that she has a Facebook account or that she was logged into a Facebook account when she visited the Atrius Health website. Nor does she allege what browser she was using or how it was configured.

7.      Plaintiffs contend that the information allegedly disclosed is protected under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). *Id.* ¶¶ 35, 38, 42, 44. Plaintiffs further contend that Atrius Health violated HIPAA privacy rules by "allowing Facebook to capture and exploit patients' Protected Health Information" without "express written authorization from patients." *Id.* ¶¶ 99–100 (citing 45 C.F.R. § 164.508).

8.      Based on these allegations, Plaintiffs assert the following claims on behalf of a putative class of Massachusetts residents: (1) interception of wire communications in violation of Mass. G.L. c. 272, § 99, *id.* ¶¶ 166–84; (2) invasion of privacy in violation of Mass. G.L. c. 214, § 1B, *id.* ¶¶ 185–205; (3) "breach of fiduciary duty and/or common law duty of confidentiality," *id.* ¶¶ 206–12; (4) breach of express contract, *id.* ¶¶ 213–19; (5) breach of implied contract, *id.* ¶¶ 220–40; and (6) unjust enrichment, *id.* ¶¶ 241–48.

## BASIS FOR REMOVAL

9.      Pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a), Atrius Health removes this case to federal court. The statute authorizes the removal of state court cases against "any officer (or any person acting under that officer) of the United States or any agency thereof . . . for or relating to any act under color of such office." *Id.* § 1442(a)(1).

10.     There is no presumption against federal officer removal, *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 38 (D. Mass. 2020), and under binding Supreme Court precedent, the federal officer removal statute must be "liberally construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). Private defendants routinely remove state court actions under this statute when acting under color of federal office. *See, e.g.*, *Moore v. Elec. Boat Corp.*, 25 F.4th 30 (1st Cir. 2022).

11. To meet the low bar for removal, the defendant must show (1) it is a "person" under the statute and was "acting under a federal officer's authority," (2) that "the charged conduct was carried out 'for or relating to' the asserted official authority," and (3) that the defendant "will assert a colorable federal defense." *Moore*, 25 F.4th at 34 (citation omitted).

12. Atrius Health meets each of these requirements. First, companies qualify as "person[s]" under the statute, so Atrius Health clearly meets this threshold element. In addition, Atrius Health acted under federal officer authority because it developed its website and patient portal in conjunction with a series of federal programs that sought to create a nationwide health information technology infrastructure. Second, the alleged conduct at issue in Plaintiffs' Complaint was carried out "for or relating to" Atrius Health's authority under federal incentive and interoperability initiatives centered on Medicare and Medicaid, including the Meaningful Use program, Merit-based Incentive Payment System (MIPS), and the Primary Care First program. Through these initiatives, the federal government provides monetary incentives and guidance to providers, including Atrius Health, to enhance patient engagement and expand online access to their EHR. Under federal direction, Atrius Health has gathered data demonstrating expanded patient access and improved patient engagement. Third, Atrius Health intends to assert a colorable federal defense to Plaintiffs' claims.

13. Courts across the country have upheld federal officer removal in similar privacy class actions against healthcare defendants related to their websites. *See Doe I v. UPMC,* 2020 WL 4381675, *7 (W.D. Pa. Jul. 31, 2020), *interlocutory appeal denied,* 2020 WL 5742685 (W.D. Pa. Sept. 25, 2020) ("UPMC has shown that by its participation in the Meaningful Use [p]rogram, it was 'acting under' DHHS when it engaged in the conduct at issue in the Complaint."); *Doe v. ProMedica Health Sys., Inc.,* 2020 WL 7705627, *3 (N.D. Ohio Oct. 30, 2020), *appeal denied,*

2020 WL 7705713 (N.D. Ohio Dec. 14, 2020) ("Because Defendant's participation assisted the federal government in achieving that goal [creating an interoperable system of patient EHR], Defendant has satisfied the 'acting under' prong."). Removal is proper here as well.

### *Background on Federal Programs*

14. Stretching back to 2004, the federal government has tried to spur "a nationwide implementation of interoperable health information technology in both the public and private health care sectors."[4] To that end, President George W. Bush signed an Executive Order calling for the establishment of the Office of the National Coordinator for Health Information Technology (ONC) within the Department of Health and Human Services (HHS).

15. In the Health Information Technology for Economic and Clinical Health Act of 2009, Congress followed up on that Executive action, *see* American Recovery and Investment Act of 2009, 111 P.L. No. 5 § 3001(a)(1), 123 Stat. 115, 230 (2009), and directed billions of dollars of federal funds to the Centers of Medicare and Medicaid Services (CMS) within HHS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." 123 Stat. at 246 (codified at 42 U.S.C. § 300jj-31).

16. Following that mandate, the ONC enlisted private healthcare providers, including Atrius Health, to help build that nationwide infrastructure. In doing so, the ONC recognized that private healthcare providers are essential to the development of the Congressionally-directed infrastructure precisely because they have direct access to patients. The government has therefore tried to augment "a provider's ability to influence patient engagement by providing a wider range

---

[4] Exec. Order No. 13,335, 69 Fed. Reg. 24,057 (Apr. 27, 2004), available at https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf.

of technologies and methods for a patient's use." Medicare and Medicaid Programs; Electronic Health Record Incentive Program-Stage 3 and Modifications to Meaningful Use in 2015 Through 2017, 80 Fed. Reg. 62,761, 62,848 (Dec. 15, 2015).

17.     In furtherance of its goals, the ONC issues guidance to private providers in the form of strategic plans. For instance, in the 2015–2020 plan, the ONC required "federal agencies" to "collaborate with . . . private stakeholders to . . . [b]uild a culture of electronic health information access and use."[5] The 2020–2025 plan underscores the collaboration that has already occurred: "The federal government and private sector have worked together to help digitize health information and healthcare."[6]

18.     Medicare and Medicaid EHR incentive and interoperability initiatives have been at the center of these federal efforts. For instance, CMS established the Meaningful Use program in 2011, which has been followed by various other initiatives and programs. *See* 42 C.F.R. §§ 495.2–495.370. The goal of these initiatives has been to increase patients' "meaningful use" and engagement with their EHR.[7]

19.     Since 2011, federal EHR interoperability initiatives, including the Meaningful Use program, MIPS, and the Primary Care First program, have offered incentive payments to Medicare and Medicaid providers when they voluntarily provide program reports and meet specific criteria for increasing patient engagement.[8]

---

[5] ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it-strategic-plan-2015-2020.php.
[6] ONC, *Federal Health Information Technology Strategic Plan 2020-2025* (*2020–2025 Strategic Plan*), available at https://www.healthit.gov/sites/default/files/page/2020-01/2020-2025FederalHealthIT%20StrategicPlan_0.pdf.
[7] *See* CMS.gov, *Promoting Interoperability Programs*, available at https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms.
[8] *See id.* (noting history of interoperability programs); CMS.gov, *Traditional MIPS Overview*, available at https://qpp.cms.gov/mips/traditional-mips (describing promoting interoperability

20. The program requirements for increasing patient engagement include implementing certified EHR technology based on federal standards and technical specifications to facilitate patients viewing their medical records. *See* 45 C.F.R. § 170.315. Once ONC certifies that a particular technology complies with federal standards, the developer can market the product to healthcare providers. To meet the numerous federal requirements, CMS recommends that providers create patient "portals" to facilitate access to providers and EHR. CMS has explained that the portals "must be engaging and user-friendly," and to make that happen, providers should "actively promote and facilitate portal use."[9]

21. HHS requires program participants to show patients' increased engagement over time. Those providers that voluntarily meet the engagement criteria, qualify for higher federal payments. *See* 42 U.S.C. § 1395w-4.

22. For instance, one objective of the Meaningful Use program was to "[p]rovide patients the ability to view online, download, and transmit their health information within 4 business days of the information being available to the [provider]." 42 C.F.R. § 495.22(e)(8)(i). To meet that objective, providers had to show that more than fifty (50) percent of Medicaid patients received access to view, download, and transmit their health information to a third party—a percentage that went up over time. *Compare id.* § 495.22(e)(8) (50 percent in 2015), *with id.* § 495.24(d)(5)(i)(B) (80 percent in 2019).

---

component); CMS.gov, *2021 Promoting Interoperability: Traditional MIPS*, available at https://qpp.cms.gov/mips/explore-measures?tab=advancingCareInformation&py=2021#measures (detailing 2021 MIPS requirements for Promoting Interoperability component)

[9] ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013), available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

23. In addition to the Meaningful Use program and MIPS initiatives promoting interoperability, CMS created another program, the Primary Care First program, that incentivizes physicians who may not participate in the other initiatives. Under the Primary Care First program, CMS enters into participant agreements with certain providers to, among other things, further incentivize patient access and EHR interoperability. For instance, participants must ensure that patients receive access to their EHR within one business day and that their EHR technology enables a patient to "[i]dentify, record, and access information directly and electronically shared by a patient." 45 C.F.R. § 170.315(e)(3).

24. Aside from incentive programs, CMS also provided an example of how to engage with beneficiaries: it created its own portal and promoted patient engagement through the use of third-party services on its websites. By working with over two dozen third-parties,[10] CMS is able to "collect basic information about visits to Medicare.gov." *See* Ex. A, Medicare.gov, *Privacy Policy*, available at https://www.medicare.gov/privacy-policy. CMS "use[s] third-party web services to conduct outreach and education through the use of digital advertising for Medicare.gov." *Id.* These services include "the use of web beacons (also called pixels)," which CMS uses "to better target Medicare advertisements." *Id.*

25. CMS also engaged Facebook to "place[] a cookie or pixel . . . for conversion tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the

---

[10] *See* Medicare.gov, *Privacy information regarding third-party services*, available at https://www.medicare.gov/third-party-privacy-policies.

performance of CMS advertisements based on consumer activity and to report the ad performance to CMS."[11]

### *Atrius Health is a "person"*

26. Federal officer removal can be effectuated by "any person acting under" a federal officer. 28 U.S.C. § 1442(a)(1).

27. Courts have repeatedly held that corporations qualify as "person[s]" under the statute. *See, e.g.*, *Moore,* 25 F.4th at 34–38; *see also Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 357 & n.9 (1st Cir. 2009).

28. Atrius Health is a Massachusetts non-profit corporation, Compl. ¶ 8, and thus qualifies as a "person."

### *Atrius Health is "acting under" Federal Authority*

29. The "acting under" element for federal officer removal—must be "broad[ly]" and "liberally construe[d]." *See Moore*, 25 F.4th at 34 n.3. This element involves "an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis in original).

30. Atrius Health readily meets that requirement. First, on behalf of itself and its providers, Atrius Health has been a longstanding participant in Medicare and Medicaid EHR incentive programs and initiatives, including the Meaningful Use program, MIPS, and the Primary Care First program. Through its voluntary participation, Atrius Health has assisted and continues to assist the federal government in carrying out its goal of creating a nationwide healthcare information technology infrastructure. *See* ONC, *2020–2025 Strategic Plan*. This work has

---

[11] *See* HHS, *Third Party Websites and Applications Privacy Impact Assessment –Facebook Ads* (Sept. 4, 2018), available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-facebook-ads.html.

included development of its patient portal to meet interoperability standards and filing periodic reports attesting to efforts to increase patient engagement.

31. Second, the government has modeled how to best enhance patient engagement. That includes development of a patient portal and analyzing patient engagement, including with digital marketing tools. Furthermore, the federal government has shown participants how to enhance patient engagement on its own websites by using third-party services to track users' engagement with those websites, including on the CMS website and the HHS website. *See* Ex. B, CMS.gov, *Privacy Policy*, available at https://www.cms.gov/privacy; Ex. C, HHS.gov, *HHS Privacy Policy Notice*, available at https://www.hhs.gov/web/policies-and-standards/hhs-web-policies/privacy/index.html.

32. Third, the federal government has created an office devoted to promoting patient engagement with health records and closely monitors private providers' work to achieve that goal. In exchange for carrying out the work of improving patient access and engagement, Atrius Health and other private providers have received payments and direction through various federal programs and initiatives, including the Meaningful Use program, MIPS, and the Primary Care First program. Such exchanges are akin to a government-contractor relationship. *See Moore*, 25 F.4th at 34 n.3.

33. Finally, the Primary Care First program includes promoting interoperability and patient access to records as an element of improving patient care. As part of the program, Atrius Health has entered into Primary Care First participation agreements for almost all of its clinical facilities, ensuring that it attains the interoperability benchmarks that are part of the federal government's efforts to improve primary care and interoperability. The federal government would

not be able to "carry out" these important federal healthcare initiatives without participation by providers like Atrius Health. *See Watson*, 551 U.S. at 152.

### *Atrius Health's Conduct Taken "for or relating to" the Asserted Federal Authority*

34.     The "for or relating to" element means that the Plaintiffs' claims must be "related to" the activity Atrius Health took while "acting under" the federal officer. *See Moore*, 25 F.4th at 35–36. "No causal link is required," and the required nexus "is not to be understood as anything more than a 'related to' nexus." *Id.* The Supreme Court has stated "that the ordinary meaning of the phrase 'relating to' is 'a broad one,' holding that it normally means in 'association with or connection with.'" *Id.* at 35 n.4 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992)).

35.     As detailed above, the Complaint focuses on Atrius Health's alleged use of a common website analytical tool, the Meta Pixel. *See, e.g.*, Compl. ¶¶ 4–6, 22, 32, 82, 85–92. As Plaintiffs allege, and the government's own use of pixels shows, "[a] third-party website that incorporates Meta Pixel benefits from the ability to analyze a user's experience and activity on the website to assess the website's functionality and traffic." *Id.* ¶ 74. Plaintiffs thus challenge development of Atrius Health's website that helps to promote patient engagement.

36.     "Any single claim is independently sufficient to satisfy the 'for or relating to' requirement under § 1442(a)(1)." *Moore*, 25 F.4th at 35. Whether it is the wiretapping claim or the more general invasion of privacy claim advanced in the Complaint, Plaintiffs target Atrius Health's actions taken in response to federal program incentives.

37.     For instance, Plaintiffs argue that Atrius Health's conduct violated Massachusetts' wiretapping statute, *see* Compl. ¶¶ 165–84, and in support of that claim, Plaintiffs contend that Atrius Health "aided in the interception of 'contents'" of Plaintiffs' communications, including

"Log-Ins," to the patient portal, *id.* ¶ 179. Placing log-ins to the patient portal in various places on the website promotes portal engagement and thus helps meet interoperability standards in various federal EHR programs and initiatives. Accordingly, at least one claim "relat[es] to" Atrius Health's role in carrying out the federal government's goal of creating a national healthcare information technology infrastructure.

38. In a similar case, *UPMC*, the plaintiffs there also asserted state law claims against a defendant healthcare provider based on alleged disclosure of personally identifiable information to third parties for marketing purposes and without the plaintiffs' knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The district court for the Western District of Pennsylvania found that as a Meaningful Use participant, "UMPC must, among other things, raise awareness and increase usability of the UPMC website and [its] portal." *Id.* at *6. The court then concluded that targeting disclosure of information to third parties, such as Facebook, "plainly" established "a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability." *Id.* The same is true of Plaintiffs' claims here.

### *Atrius Health's Colorable Federal Defense*

39. The final element for removal under Section 1442 merely requires that the defendant assert a "colorable federal defense." *See Mesa v. California*, 489 U.S. 121, 129–30 (1989) (colorable federal defense is "defensive" and "based in federal law"). A federal defense is "colorable" as long as it is not "wholly insubstantial and frivolous," even if it is not "clearly sustainable." *Moore*, 25 F.4th at 36 (citations omitted).

40. Atrius Health intends to argue that the information allegedly disclosed, including information about website interactions and Facebook IDs, was not protected health information

under HIPAA. Plaintiffs' assertion that the allegedly disclosed information falls under the category of individually identifiable health information, *see* Compl. ¶¶ 42, 44 (citing 45 C.F.R. § 164.514(b)(2)(i)(R)), requires interpretation of federal law.

41. HIPAA lies at the center of Plaintiffs' claims and whether the information at issue was HIPAA-protected is a question of federal law. As such, Atrius Health has established a colorable federal defense. Atrius Health may identify additional defenses that involve federal law as it continues to review Plaintiffs' Complaint.

## PROCEDURAL REQUIREMENTS

42. All the procedural requirements for removal under 28 U.S.C. § 1446 are satisfied.

43. Atrius Health is filing this Notice of Removal within thirty (30) days of its receipt of the Complaint by formal "service," which occurred on December 6, 2023. 28 U.S.C. § 1446(b); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("formal service" required to start 30-day period pursuant to § 1446(b)).

44. This Court is the corresponding federal court for the Norfolk County Superior Court of the Commonwealth of Massachusetts, where the suit was originally filed. Venue is therefore proper under 28 U.S.C. §§ 101 and 1441(a).

45. Atrius Health has attached a copy of the Complaint and all other publicly available filings from the state court docket as Exhibits D–I.

46. Upon filing this Notice, Atrius Health will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Norfolk County Superior Court. 28 U.S.C. § 1446.

**WHEREFORE**, Notice is given that this action is removed from the Norfolk County Superior Court of the Commonwealth of Massachusetts to the United States District Court for

the District of Massachusetts.

Dated: December 23, 2022

                                        Respectfully submitted,

                                        **HOGAN LOVELLS US LLP**

                                        */s/ Kayla H. Ghantous*

By:    Maria R. Durant (BBO # 558906)
        Kayla H. Ghantous (BBO # 709197)
        125 High Street, Suite 2010
        Boston, MA 02110
        Telephone: (617) 371-1000
        Facsimile: (617) 371-1037
        maria.durant@hoganlovells.com
        kayla.ghantous@hoganlovells.com

        Allison Holt Ryan (*pro hac vice forthcoming*)
        Adam A. Cooke (BBO # 679637)
        Columbia Square
        555 Thirteenth Street, NW
        Washington, DC 20004
        Telephone: (202) 637-5600
        Facsimile: (202) 637-5910
        allison.holt-ryan@hoganlovells.com
        adam.a.cooke@hoganlovells.com

        *Counsel for Atrius Health, Inc.*

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 23, 2022, copies of the foregoing Notice of Removal and accompanying exhibits were sent via electronic mail and overnight delivery, as indicated below, to:

  Sweeney Merrigan Law
  J. Tucker Merrigan
  Victoria Santoro Mair
  Erin E. McHugh
  268 Summer St. LL
  Boston, MA 02210
  tucker@sweeneymerrigan.com
  victoria@sweeneymerrigan.com
  emchugh@sweeneymerrigan.com

  Ahmad, Zavitsanos, & Mensing, P.C.
  Foster C. Johnson
  David Warden
  Nathan Campbell
  1221 McKinney Street, Suite 3460
  Houston, Texas 77010
  fjohnson@azalaw.com
  dwarden@azalaw.com
  ncampbell@azalaw.com

  Keller Postman LLC
  Seth Meyer
  Alex Dravillas
  150 N. Riverside Plaza
  Suite 4100
  Chicago, Illinois 60606
  sam@kellerpostman.com
  adj@kellerpostman.com

*Counsel for Plaintiffs John Doe and Jane Doe, Individually and on Behalf of all Others Similarly Situated*

            */s/   Kayla H. Ghantous*
            *Counsel for Atrius Health, Inc.*